AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)    Case No. 21-mj-107
THE PREMISES LOCATED AT )
302 MULBERRY ST. )
DONALDSONVILLE, LOUISIANA 70346 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A"

located in the _____Middle_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | Possession with intent to distribute and distribution of methamphetamine and marijuana. |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_TFO Jason Dohm_
*Applicant's signature*

Jason A. Dohm, DEA Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: _____12/08/2021_____

_Erin Wilder-Doomes_
*Judge's signature*

City and state: Baton Rouge, Louisiana    Erin Wilder-Doomes, U.S. Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE APPLICATION  :
OF THE UNITED STATES OF AMERICA  :  MAGISTRATE NO. 21-mj-107
FOR A WARRANT AUTHORIZING THE  :
SEARCH OF THE PREMISES LOCATED  :  **UNDER SEAL**
AT 1713 ST. PATRICK ST., APARTMENT  :
145, DONALDSONVILLE, LOUISIANA  :
70346 AND 302 MULBERRY ST.,  :
DONALDSONVILLE, LOUISIANA, 70346  :

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

Your Affiant, Jason A. Dohm, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), being duly sworn, deposes and states as follows:

### I.    INTRODUCTION

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure and Title 21, United States Code, Section 879, for a warrant to search the following locations:

    a.    **1713 St. Patrick St., Apartment 145, Donaldsonville, Louisiana 70346**; and

    b.    **302 Mulberry St., Donaldsonville, Louisiana 70346**

as further described in Attachment A, for the things described in the following paragraphs and further described in Attachment B.

### II.    AGENT BACKGROUND

2.    I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3.      Since March 2016, I have been assigned to the Baton Rouge District Office ("BRDO") of the DEA from my host agency, the Baton Rouge City Police Department ("BRPD").  I have been employed with the BRPD since April 19, 2004, and I have been assigned to the narcotics division as a narcotics detective since December 2009.  I was previously assigned to the DEA from February 26, 2012 to March 2015.  From March 2015 to March 2016, I was transferred back to the narcotics division of BRPD where I continued investigating narcotics trafficking cases in the Baton Rouge area.  Since being assigned to the DEA as a TFO, I have conducted numerous investigations of unlawful drug distribution in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, and conducted or participated in electronic and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of cooperating sources and reviews of taped conversations and drug records.  Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, and the methods of payment for such drugs.  I have conducted and participated in investigations involving interception of wire and electronic communication devices, and I am familiar with the ways in which drug traffickers conduct their business including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones and digital display paging devices, to include text messages and their use of numerical codes and code words to conduct their transactions.

4.      In addition, I have conducted, in connection with these and other cases, follow up investigations concerning the concealment of assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs, and bank checks, as related to drug trafficking.

5.      I have conducted and participated in investigations involving interception of wire and electronic communication devices, and I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones and digital display paging devices, to include text messages and their use of numerical codes and code words to conduct their transactions.  During these investigations, I have authored federal affidavits requesting approval for the interception of wire communications and in support of applications for search warrants.  Also during these investigations, I have reviewed and interpreted thousands of conversations and text messages related to the distribution of methamphetamine, cocaine, heroin, and other illegal controlled substances.

6.      Through my training, education, and experience, I have also learned that drug traffickers maintain books, records, notes, airline tickets, money orders, and other papers and documents relating to transportation, ordering, sale, and distribution of illegal controlled substances in the place where they store their drugs.  It is also common for narcotics traffickers to hide drug sales and records of drug transactions in secure locations within their residence and/or residence of family member and/or residences of close associates for their ready access and control and to conceal them from law enforcement.  It is also common for narcotics traffickers to hide records of drug transactions in secure locations within their residence for their ready access and control, and to conceal them from law enforcement.  Narcotics traffickers also conceal, in their residences, currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of illegal drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of the money gained from illegal narcotics-trafficking activities.

7.      Your Affiant knows, through training and experience, that locations used by drug traffickers to store methamphetamine and marijuana, and package methamphetamine and marijuana for distribution, often contain tools used for these purposes and other evidence of narcotics trafficking.  These items include, but are not limited to, methamphetamine and marijuana, kilogram wrappings, latex gloves, digital scales, packaging materials, cooking materials, cutting materials, mixing devices, rubber gloves, firearms, U.S. currency, and ledgers or logs containing records of past, present, or future drug transactions.  Further, your Affiant knows, through training and experience, methamphetamine and marijuana traffickers sometimes keep firearms in their residences to protect the methamphetamine and marijuana and/or money derived from the sale of narcotics.

8.      Your Affiant knows, through training and experience, narcotics traffickers often keep money derived from the sale of illegal controlled substances in their residence. Furthermore, your Affiant knows, through training and experience, that locations used by narcotics traffickers to count, store, and package money derived from the sale of illegal controlled substances often contain tools used for this purpose.  These tools include, but are not limited to, U.S. currency, rubber bands, money counters, plastic wrap, digital calculators, safes, strong boxes or other lockable containers, and written ledgers documenting dates, and amounts of currency transferred and to whom these transfers occurred.

## III.    **PURPOSE OF AFFIDAVIT**

9.      Your Affiant is currently participating in an Organized Crime Drug Enforcement Task Force ("OCDETF") investigation involving agents and officers of the DEA, BRPD, Internal Revenue Service ("IRS"), Iberville Parish Sheriff's Office ("IPSO"), East Baton Rouge Parish Sheriff's Office ("EBRSO"), West Baton Rouge Parish Sheriff's Office ("WBRSO"),

Gonzales Police Department ("GPD"), and the Ascension Parish Sheriff's Office ("APSO"). This investigation is targeting the methamphetamine and marijuana trafficking activities of the **Reshide WOODEN Drug Trafficking Organization** ("**WOODEN DTO**") and the **Malcolm OLIVER Drug Trafficking Organization** ("**OLIVER DTO**"), in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

10.    I make this affidavit based upon my personal knowledge derived from my participation in this investigation and upon information from the following sources, which I believe to be reliable:

    a.    Affiant's experience investigation drug-trafficking offenses;

    b.    Oral and written reports and documents about this and other investigations which I have received from members of DEA and other local and federal law enforcement agencies, and telecommunications companies;

    c.    Physical surveillance conducted by DEA and other law enforcement agencies, the results of which have been reported to me either directly or indirectly;

    d.    Controlled undercover purchase of methamphetamine;

    e.    Public records;

    f.    Police reports and law enforcement databases;

    g.    Review of pen register/trap and trace information, telephone toll records and subscriber information for telecommunications;

    h.    Reports of consensually monitored and recorded telephone conversations;

    i.    Interviews of confidential sources; and

    j.    Conclusions based on my and other DEA agents, some of whom have been qualified as expert witnesses in narcotics trafficking cases, interpretations of conversations and text messages intercepted pursuant to a court authorized interception of wire and electronic communications.

11.     Because this affidavit is being submitted for the limited purpose of seeking authorization for the issuance of a search warrant, your Affiant has not included each and every fact learned during the course of this investigation.  Facts not set forth herein are not being relied upon in reaching the conclusion that a search warrant should be issued.

12.     As set forth below, there is probable cause to believe that **Reshide WOODEN a/k/a "SHIDE"** ("**WOODEN**") is utilizing **1713 St. Patrick St., Apartment 145, Donaldsonville, Louisiana 70346**, to facilitate his methamphetamine and marijuana trafficking, including storing, packaging and distributing methamphetamine and marijuana and storing proceeds derived from the sale of methamphetamine and marijuana.

13.     As set forth below, there is probable cause to believe that **WOODEN** is utilizing **302 Mulberry St., Donaldsonville, Louisiana 70346**, to facilitate his methamphetamine and marijuana trafficking, including storing proceeds derived from the sale of methamphetamine and marijuana and storing, packaging, and distributing illicit narcotics, to include marijuana and methamphetamine.

14.     Described below are details of the investigation including some of the pertinent telephone calls and text messages intercepted over **TARGET TELEPHONE 3**, as described in paragraph 19.  In some instances, the entire conversation has been included and in others only the pertinent parts of the conversation are detailed.  Where only pertinent parts of a conversation are detailed, your Affiant has listened to and analyzed the entire telephone call and/or text message.

15.     Your Affiant has included his interpretation, contained within parentheses, of code words or the meaning of the conversation.  Your Affiant's interpretations of the conversations and code words are based on experience, prior intercepts, prior investigation and facts available at the time of the writing of this affidavit.

## IV.    <u>PROBABLE CAUSE</u>

16.     Since February 2021, agents of the DEA BRDO and New Orleans Field Division ("NOFD") have been conducting an investigation of the methamphetamine trafficking of the **OLIVER DTO**.

17.     During the course of the investigation, agents identified a telephone number utilized by **Malcolm OLIVER** to facilitate his drug trafficking operation.  Thereafter, agents began interceptions of **OLIVER**'s telephone (**TARGET TELEPHONE 1**).

18.     During the course of the investigation, based on interceptions over **TARGET TELEPHONE 1**, agents were able to identify **WOODEN** as a source of methamphetamine for **OLIVER**.

19.     Based on physical surveillance, interceptions of **WOODEN** over **TARGET TELEPHONE 1**, and the analysis of telephone toll and pen register information, agents initiated court authorized Title III intercepts of 225-323-3204, a telephone used by **WOODEN** to facilitate his drug trafficking (**"TARGET TELEPHONE 3"**).  Agents began interceptions of **TARGET TELEPHONE 3** on November 16, 2021 and are still actively intercepting communications at this time.

20.     Based on the investigation, your Affiant believes that **WOODEN** resides at **1713 St. Patrick St., Apartment 145, Donaldsonville, Louisiana 70346**, with **Raven HARRIS ("HARRIS")**; and that **Betty BUTLER ("B. BUTLER")**, **WOODEN**'s grandmother, resides at

7

**302 Mulberry St., Donaldsonville, Louisiana 70346**.

21.     Included in the Court Order authorizing the interception of wire and electronic communications occurring over **TARGET TELEPHONE 3** is the release of E-911 Phase II Geo Location data from the service provider.  E-911 Phase II Geo Location data is the GPS location of **TARGET TELEPHONE 3**.  It should be noted that location data is received about every 15 to 20 minutes and has varying degrees of error in accuracy, given in feet or miles. When your Affiant states in this affidavit that location data showed **TARGET TELELPHONE 3** at or near a specific location, the degree of error has been calculated and your Affiant has reasonably concluded that the named location is within the area covered by the degree of error.

22.     Based on intercepted communications over **TARGET TELEPHONE 3**, agents determined **WOODEN** was distributing methamphetamine and/or marijuana to subjects identified as **Denzel GRAY a/k/a "Dank" ("GRAY")**, **David LEWIS ("LEWIS")**, **Blain SLAYTON** ("B. SLAYTON"), **Robert SLAYTON a/k/a "Opie" ("R. SLAYTON")**, **Unknown Male 0925 ("U/M 0925)**, **"KOOLAIDE" (a subject who has been tentatively identified as Marishell EALEM)**, and other identified and unidentified subjects.

    **A.     Intercepted Communication over TARGET TELEPHONE 3 on November 17, 2021, wherein WOODEN stated he keeps U.S. Currency at 302 Mulberry St., Donaldsonville, LA**

23.     On November 17, 2021, at approximately 11:37 a.m., agents intercepted Session 63, an incoming call from telephone number 225-323-4558, utilized by **Shannon BUTLER ("S. BUTLER")**, who has been identified as **WOODEN**'s mother, over **TARGET TELEPHONE 3** to **WOODEN**.

24.     During the telephone call, **S. BUTLER** asked **WOODEN**, "You (**WOODEN**) gonna come outside and give me (**S. BUTLER**) some money for that insurance?" **WOODEN**

8

asked **S. BUTLER**, "What insurance, Ma' (Mom)?" **S. BUTLER** responded, "For the car you

(**WOODEN**) riding in. The car parked under Betty car, car, carport" (**302 Mulberry St.,**

**Donaldsonville, LA**).

25.    Later during the same telephone call, **WOODEN** stated to **S. BUTLER**, "I ain't

got no money on me Ma' (Mom) my money at Maw-Maw Betty (**302 Mulberry St.,**

**Donaldsonville, LA**)."

26.    Based on the above intercepted communication, your Affiant believes that **S.**

**BUTLER** asked **WOODEN** for money to pay for a car insurance bill.  Furthermore, your

Affiant believes that **WOODEN** told **S. BUTLER** he had no money on his person and/or with

him, and all of his money was at **302 Mulberry St., Donaldsonville, LA**.

27.    Based on the above intercepted communication, your Affiant believes that

**WOODEN** utilizes **302 Mulberry St., Donaldsonville, LA**, to store U.S. Currency derived from

illicit narcotics sales and distribution.

**B.    Intercepted Communication over TARGET TELEPHONE 3 on November
21, 2021, wherein WOODEN directed B. BUTLER to remove a bag from
underneath the hood of a vehicle located at 302 Mulberry St., Donaldsonville,
LA**

28.    On November 21, 2021, at approximately 5:42 p.m., agents intercepted Session

645, an outgoing call from **WOODEN**, over **TARGET TELEPHONE 3**, to telephone number

225-210-8440, utilized by **B. BUTLER**.  During the telephone call, the following conversation

took place:

> **BUTLER**: "Yeah?"
>
> **WOODEN**: "I (**WOODEN**) had little, put bag under my red hood. You (**B.
> BUTLER**) can go get it (bag) for me (**WOODEN**)?"
>
> **BUTLER**: "A bag under your red hood?"

**WOODEN**: "Yeah."

**BUTLER**: "That red car?"

**WOODEN**: "Yeah."

**BUTLER**: "All right. I'm a go get it. All right."

29.     Based on the above intercepted communication, your Affiant believes **WOODEN**

asked **B. BUTLER** to obtain a bag containing U.S. Currency and/or illicit narcotics from

underneath the hood of a red vehicle at **302 Mulberry St., Donaldsonville, LA**.  Furthermore,

your Affiant believes **B. BUTLER** agreed to go and retrieve the bag for **WOODEN** from

underneath the hood of the vehicle and move it inside of **302 Mulberry St., Donaldsonville,**

**LA**.

30.     Based on the above intercepted communication, your Affiant believes that

**WOODEN** utilizes **302 Mulberry St., Donaldsonville, LA**, to store illicit narcotics and/or U.S.

Currency derived from illicit narcotics sales and distribution.

    **C.**    **Intercepted Communication over TARGET TELEPHONE 3 on November 22, 2021, wherein WOODEN directed B. BUTLER where to place a book sack inside 302 Mulberry St., Donaldsonville, LA**

31.     On November 22, 2021, at approximately 10:41 a.m., agents intercepted Session

720, an incoming call from telephone number 225-323-4558, utilized by **S. BUTLER** over

**TARGET TELEPHONE 3** to **WOODEN**.

32.     At the beginning of the telephone call, **S. BUTLER** told **WOODEN** to hold on as

she was trying to get **B. BUTLER** on the phone.  Once **B. BUTLER** got on the telephone, the

following conversation took place:

    **B. BUTLER**: "Shide, (**WOODEN**) I'm (**B. BUTLER**) 'bout to leave (**302 Mulberry St., Donaldsonville, LA**), you (**WOODEN**) need anything from here (**302 Mulberry St., Donaldsonville, LA**)? 'Cause I ain't gon' be long but I'm (**B. BUTLER**) 'bout to leave (**302 Mulberry St., Donaldsonville, LA**) for right now.

**WOODEN**: "Where you (**B. BUTLER**) put my book sack?"

**B. BUTLER**: "It's where, where you (**WOODEN**) had it at. But, I'm a move it and put it in my room."

**WOODEN**: "Just uh, uh, hello?"

**B. BUTLER**: "Yeah, I'm here."

**WOODEN**: "You can go put it in the deep freezer. No, don't put it in the deep freezer."

**B. BUTLER**: "Huh?"

**WOODEN**: "Just set it (book sack) uh, just set it in one of your cabinets or something."

**B. BUTLER**: "I'm coming back but I mean Ty [ph], Ty, Ty gon' be gone too. We ain't gon' be that long."

**WOODEN**: "Alright."

**B. BUTLER**: "Alright."

33.    Based on the above intercepted communication, your Affiant believes **B. BUTLER** asked **WOODEN** where **WOODEN** wanted her to place his book sack that contained illicit narcotics and/or U.S. Currency.  Furthermore, your Affiant believes **WOODEN** told **B. BUTLER** to place the bag in the deep freezer and then **WOODEN** changed his mind and told **B. BUTLER** to put his book sack in the cabinet.

34.    Based on the above intercepted communication, your Affiant believes that **WOODEN** utilizes **302 Mulberry St., Donaldsonville, LA**, to store illicit narcotics and/or U.S. Currency derived from illicit narcotics sales and distribution.

11

    **D.**    **Surveillance of WOODEN on November 28, 2021 at 119 W. Lulu St., Gonzales, LA, 1713 St. Patrick St., Apartment 145, Donaldsonville, LA and 302 Mulberry St., Donaldsonville, LA**

    35.    On November 27, 2021, at approximately 7:28 p.m., agents intercepted Session 1398, an outgoing call from **WOODEN**, over **TARGET TELEPHONE 3**, to telephone number 225-323-1386, utilized by **Kelly JONES ("K. JONES")**.  During the telephone call, the following conversation took place:

    **K. JONES**: "Hello."

    **WOODEN**: "Hello. Yeah, man."

    **K. JONES**: "I'm fucking home (119 W. Lulu St., Gonzales, LA), yeah."

    **WOODEN**: "I'm (**WOODEN**) 'bout to be on my way back down there (119 W. Lulu St., Gonzales, LA) in a lil' bit. Man fuck, I had came and catch a lil' play (narcotics sale). Up here in [Voices overlap]"

    **K. JONES**: "Well just call me (**JONES**) whenever you ready, brah. Just call me."

    **WOODEN**: "Alright. Hey, you gonna be home (119 W. Lulu St., Gonzales, LA), huh?"

    **K. JONES**: "Yeah. Where else I'm a go?"

    **WOODEN**: "I'm saying look... Hello?"

    **K. JONES**: "Yeah."

    **WOODEN**: "Aw... man, shit I'm trying to see right quick. Hold on. You around somebody?"

    **K. JONES**: "No, I'm by myself."

    **WOODEN:** "Hey, what you, what you think he'll do for the thirty (30) of them bitches (pounds of methamphetamine)?"

    **K. JONES**: "I don't know. I gotta just ask him. Fuck."

    **WOODEN**: "Like thirty (30) of them bitches (pounds of methamphetamine)."

    **K. JONES**: "But I wanna have the money (U.S. Currency) on me when I ask him

12

'cause I done already talked to him. You know what I'm saying?"

**WOODEN**: "I'm trying to see, he, he, he, he gonna want, he still gonna want the two (2) for the thirty (30)? ($2,000 per pound if buying thirty pounds)"

**K. JONES**: "I don't know. Fuck, that's what he, 'cause I told him I said, I'm gonna be getting a few of 'em, he said if you get a few of 'em... he said it was the two (2) so I'm a ask him."

**WOODEN**: "Man, yeah man, I'm trying to get a lot of 'em, brah. You know what I mean?"

**K. JONES**: "Yeah, hey but hit me on facetime, don't talk on the regular phone like that."

**WOODEN**: "They don't know what we talking 'bout. I'm a facetime you."

36.    Based on the above-described intercepted communication, your Affiant believes **K. JONES** told **WOODEN** he was at his residence located at 119 W. Lulu St., Gonzales, LA. Furthermore, your Affiant believes **WOODEN** told **K. JONES** he was going to come to his house.

37.    **WOODEN** asked **K. JONES**, if **WOODEN** bought thirty (30) pounds of methamphetamine from a third party via **K. JONES**, if **WOODEN** could get a better price than $2,000 per pound. Furthermore, your Affiant believes **K. JONES** told **WOODEN** he needed the money ($60,000) from **WOODEN** for the purchase of the narcotics (30 pounds of methamphetamine) prior to going and meeting the third party.

38.    Based on the above-described intercepted communication, along with subsequent intercepted communications and surveillance, your Affiant believes **WOODEN** traveled to 119 W. Lulu St., Gonzales, LA. Furthermore, your Affiant believes at that time **WOODEN** gave **JONES** $60,000 so **K. JONES** could purchase thirty (30) pounds of methamphetamine at $2,000 per pound for **WOODEN**.

39.     On November 28, 2021, at approximately 5:17 p.m., agents intercepted Session 1541, an outgoing call from **WOODEN**, over **TARGET TELEPHONE 3**, to telephone number 225-323-1386, utilized by **K. JONES**.

40.     During the telephone call, **K. JONES** told **WOODEN**, "All he had was fourteen (14) zips (ounces) that the dude brought him" and "He told... I (**K. JONES**) bought it for you (**WOODEN**) 'cause he told me give him sixteen hundred ($1,600) for it (all 14 ounces). So, I (**K. JONES**) bought it for you (**WOODEN**) where you could have something but, the rest of your (**WOODEN**) money (U.S. Currency) in the bag. I got all that shit (U.S. Currency and 14 ounces of methamphetamine) together for you."

41.     Later during the telephone call, **WOODEN** told **K. JONES,** "I'm (**WOODEN**) 'bout to go over there (**K. JONES**' residence 119 W. Lulu St., Gonzales, LA), dawg."

42.     Based on the above-described intercepted communication, your Affiant believes **K. JONES** stated he purchased fourteen (14) ounces of methamphetamine from another subject for **WOODEN**.  Furthermore, your Affiant believes **K. JONES** told **WOODEN** he had the remainder of **WOODEN**'s money not used to purchase narcotics and the fourteen ounces of methamphetamine for **WOODEN** in a bag.  Your Affiant further believes **WOODEN** would meet **K. JONES** at **K. JONES**' residence.

43.     At approximately 5:47 p.m., agents intercepted Session 1550, an outgoing call from **WOODEN**, over **TARGET TELEPHONE 3**, to telephone number 225-323-1386, utilized by **K. JONES**.

44.     During the telephone call, **WOODEN** told **K. JONES**, "I'm outside your crib (119 W. Lulu St. Gonzales, LA)."  **K. JONES** replied to **WOODEN**, "Hey, I came run by Rouse's. I'm 'bout to come."

14

45.     Based on the above-described intercepted communication, your Affiant believes **WOODEN** told **K. JONES** he was outside of his residence.  Furthermore, your Affiant believes **K. JONES** said he went to the grocery store and was on his way back to the residence to meet **WOODEN**.

46.     At approximately 6:03 p.m., agents established surveillance at 119 W. Lulu St. Gonzales, LA.  At that time agents observed a 2006 Honda Accord, bearing Louisiana license 624 DWR, at the residence.  A records check revealed that the vehicle is registered to **HARRIS**.

47.     At approximately 6:50 p.m., agents observed the vehicle leaving 119 W. Lulu St., Gonzales, LA proceed to LA 44, and proceed Southbound.  Agents were able to positively identify **WOODEN** as the driver of the vehicle.  At that time, surveillance was discontinued.

48.     Your Affiant reviewed E-911 data provided by AT&T indicating the location of **TARGET TELEPHONE 3**.  An analysis of this data revealed that, on November 28, 2021 between approximately 5:49 p.m. and 6:49 p.m., **TARGET TELEPHONE 3** was located at 119 W. Lulu St., Gonzales, LA.

49.     Based on the above analysis, in conjunction with surveillance and intercepted communications, your Affiant knows **WOODEN** was at 119 W. Lulu St., Gonzales, LA. Furthermore, your Affiant believes **WOODEN** obtained the remainder of U.S. Currency belonging to **WOODEN** that was not spent on the purchase of narcotics and the fourteen (14) ounces of methamphetamine from **K. JONES**.

50.     At approximately 7:20 p.m., agents intercepted Session 1570, an incoming call from telephone number 225-323-7813, utilized by **GRAY**, over **TARGET TELEPHONE 3** to **WOODEN**.

51.    During the conversation **GRAY** asked **WOODEN**, "Hey, you at the house (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**)?"  **WOODEN** responded to **GRAY**, "Yeah, nigga I told you I was [U/I]. I told you I was back in town."

52.    Later during the same telephone call, the following conversation took place:

**GRAY**: "Bring me a half (half ounce of methamphetamine) out there real quick."

**WOODEN**: "You (**GRAY**) want a half (half ounce methamphetamine)?"

**GRAY**: "No, look, I'm (**GRAY**) 'bout to come up in there (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**) and get the zip (ounce methamphetamine)."

**WOODEN**: "Im saying, what you wanted?"

**GRAY**: The zip (ounce methamphetamine). You got weed (marijuana) up in there (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**) too?"

53.    Later during the same conversation, **WOODEN** asked **GRAY**, "What you wanted? A half (half ounce methamphetamine) or a zip (ounce methamphetamine)?"  **GRAY** responded to **WOODEN**, "Just fix the zip (ounce methamphetamine)."

54.    Based on the above-described intercepted communication, your Affiant believes **GRAY** would arrive at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**, to purchase one ounce of methamphetamine from **WOODEN**.  Furthermore, your Affiant believes **GRAY** was inquiring if **WOODEN** also had marijuana.

55.    At approximately 7:25 p.m., agents made a pass of the parking lot at **1713 St. Patrick St., Donaldsonville, LA** and observed **GRAY** and **WOODEN** standing by **GRAY**'s blue Ford Mustang.  Upon agents turning around and making another pass by the parking lot of **1713 St. Patrick St., Donaldsonville, LA**, agents observed **GRAY** and **WOODEN** entering **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.

56.    At approximately 7:53 p.m., agents observed **WOODEN** and **GRAY** exit **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**, and enter their respective vehicles and depart **1713 St. Patrick St., Donaldsonville, LA**.

57.    Your Affiant reviewed E-911 data provided by AT&T indicating the location of **TARGET TELEPHONE 3**.  An analysis of this data revealed that, on November 28, 2021 at between approximately 7:20 p.m., and 7:50 p.m., **TARGET TELEPHONE 3** was located at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.  Based on this analysis, in conjunction with surveillance, your Affiant knows **WOODEN** was at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.

58.    Based on the above-described intercepted communications, in conjunction with surveillance and E-911 data, your Affiant knows **WOODEN** and **GRAY** proceeded inside **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.  Furthermore, your Affiant believes once **WOODEN** and **GRAY** were inside **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**, **WOODEN** distributed one ounce of methamphetamine to **GRAY**.

59.    Based on the above-described intercepted communications, in conjunction with surveillance and E-911 data, your Affiant believes **WOODEN** distributes methamphetamine at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.

60.    Agents continued surveillance on **WOODEN**, who was still operating the Honda Accord.  **WOODEN** proceeded directly to **302 Mulberry St., Donaldsonville, LA**.

61.    Upon arrival at **302 Mulberry St., Donaldsonville, LA**, agents observed **WOODEN** park the Honda Accord in the driveway, exit the vehicle and enter **302 Mulberry St., Donaldsonville, LA** at approximately 8:05 p.m.

62.    At approximately 8:12 p.m., agents intercepted Session 1584, an incoming call from telephone number 225-323-4558, utilized by **S. BUTLER**, over **TARGET TELEPHONE 3** to **WOODEN**.

63.    During the telephone call **S. BUTLER** asked **WOODEN**, "You by Betty (**B. BUTLER**'s residence located at **302 Mulberry St., Donaldsonville, LA)**?"  **WOODEN** responded to **S. BUTLER**, "Yeah."

64.    Later during the conversation **WOODEN** spoke to someone, believed to be **B. BUTLER**, who is with **WOODEN**.  **WOODEN** said, "More money….yeah Maw Maw (**B. BUTLER**), I went to buy something (narcotics) Maw Maw (**B. BUTLER**) and the boy (**K. JONES**) ain't have it."

65.    Based on the above-described intercepted communication, your Affiant believes **WOODEN** was explaining to **B. BUTLER** why he had U.S. Currency.

66.    Based on the above-described intercepted communications, in conjunction with physical surveillance, your Affiant believes **WOODEN** transported the U.S. Currency obtained from **GRAY** during the narcotics transaction and the U.S. Currency returned from **K. JONES** to **302 Mulberry St., Donaldsonville, LA**.

67.    Based on the above-described intercepted communications, in conjunction with surveillance, your Affiant believes **WOODEN** utilizes **302 Mulberry St., Donaldsonville, LA,** to store U.S. Currency derived from illicit narcotics sales and distribution.

> **E.  Surveillance of WOODEN conducting a narcotics transaction at 1713 St. Patrick St., Apartment 145, Donaldsonville, LA 70346 with LEWIS and subsequent traffic stop on November 29, 2021**

68.    On November 29, 2021, at approximately 3:30 p.m., agents intercepted Session 1628, an incoming call from telephone number 225-323-3045, utilized by **LEWIS**, over

**TARGET TELEPHONE 3** to **WOODEN**.

69.    During the telephone call, **LEWIS** asks **WOODEN**, "Where you uh, where you (**WOODEN**) at? By Raven (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**)?" **WOODEN** responded to **LEWIS**, "Yeah." **LEWIS** told **WOODEN**, "Alright, I'm coming pass over there (**1713 St. Patrick St., Donaldsonville, LA**). You (**WOODEN**) still have them shards (crystal methamphetamine in a rock like formation)?"

70.    Later during the same telephone call, **WOODEN** asked **LEWIS**, "How much (methamphetamine) you (**LEWIS**) wanted?" **LEWIS** replied to **WOODEN**, "I'm (**LEWIS**) coming to get one (one ounce methamphetamine) right now."

71.    Based on the above-described intercepted communication, your Affiant believes **LEWIS** would arrive at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA,** to purchase one ounce of methamphetamine from **WOODEN**.

72.    Continuing on the same date, at approximately 3:38 p.m., agents established surveillance at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.

73.    Continuing on the same date, at approximately 3:55 p.m., agents intercepted Session 1629, an incoming call from telephone number 225-323-3045, utilized by **LEWIS**, over the **TARGET TELEPHONE 3** to **WOODEN**. During the telephone call, the following conversation occurred:

> **LEWIS**: "I'm out here (**1713 St. Patrick St., Donaldsonville, LA**) yeah."
>
> **WOODEN**: I'm 'bout to come out there."
>
> **LEWIS**: "Hey, you (**WOODEN**) got my (**LEWIS**) text, huh?"
>
> **WOODEN**: "Yeah"
>
> **LEWIS**: "Bring a whole one and a half (one and a half ounces of methamphetamine)."

74.    Based on the above-described intercepted communication, your Affiant believes **LEWIS** arrived at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.  Furthermore, your Affiant believes **LEWIS** now wanted to obtain one and a half (1 ½) ounces of methamphetamine from **WOODEN**.

75.    At the same time of the above-mentioned intercepted communication, agents observed a Chevrolet Suburban, bearing Louisiana license plate 396 EDL, arrive in the parking lot at **1713 St. Patrick St., Donaldsonville, LA**.  A records check revealed the Chevrolet is registered to **LEWIS** at 3126 Lemanville Cutoff Road, Donaldsonville, LA.

76.    Continuing on the same date, at approximately 4:00 p.m., agents observed **WOODEN** exit the front door of **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**, and proceed to the driver's door area of the Chevrolet Suburban and contact **LEWIS.**

77.    Continuing on the same date, at approximately 4:22 p.m., **WOODEN** departed from the driver's door area of the vehicle and the Chevrolet Suburban left the parking lot of **1713 St. Patrick St., Donaldsonville, LA**.

78.    At that time, agents conducted continuous surveillance on the Chevrolet Suburban.  An APSO Deputy in a fully marked police unit conducted a traffic stop on the Chevrolet for not using a turn signal when turning left from the 945 Loop onto LA Highway 308.  At that time, **LEWIS** was identified as the driver and sole occupant of the vehicle.

79.    During the course of the investigation, following the traffic stop, approximately three ounces of methamphetamine and approximately two grams of cocaine base was located in the vehicle.

80.    Your Affiant notes that **WOODEN** remained in the parking lot once **LEWIS** left **1713 St. Patrick St., Donaldsonville, LA**, lounging on his vehicle and meeting no other

persons.  At approximately 4:38 p.m., agents observed **WOODEN** enter into **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.

81.     Your Affiant reviewed E-911 data provided by AT&T indicating the location of **TARGET TELEPHONE 3**.  An analysis of this data revealed that, on November 29, 2021 between approximately 3:31 p.m. and 4:46 p.m., **TARGET TELEPHONE 3** was located at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.  Based on this analysis, in conjunction with surveillance, your Affiant knows **WOODEN** was at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.

82.     Based on the above-described intercepted communications, in conjunction with E-911 data, surveillance and narcotics located during the traffic stop your Affiant knows **WOODEN** retrieved at least one and a half ounces but as much as three ounces of methamphetamine from **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**, and proceeded to the parking lot of **1713 St. Patrick St., Donaldsonville, LA** where **WOODEN** distributed the methamphetamine to **LEWIS**.

83.     Based on the above-described intercepted communications, in conjunction with surveillance and E-911 data, and narcotics located during the traffic stop your Affiant knows **WOODEN** distributes methamphetamine at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.

84.     Based on the above-described intercepted communications, in conjunction with surveillance and E-911 data, and narcotics located during the traffic stop your Affiant believes **WOODEN** stores U.S. Currency derived from illicit narcotics sales and distribution at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**.

**F.    Communications between HARRIS and WOODEN on December 1, 2021 wherein WOODEN directed HARRIS to obtain narcotics from within 1713 St. Patrick St., Apartment 145, Donaldsonville, LA, and distribute them to KOOLAIDE**

85.    On December 1, 2019, at approximately 4:43 p.m., agents intercepted Session 1856, an outgoing call from **WOODEN** over **TARGET TELEPHONE 3**, to telephone number 225-802-7281, utilized by **HARRIS,** identified as **WOODEN**'s girlfriend.

86.    During the telephone call, **WOODEN** stated to **HARRIS**, "Oh, I needed you (**HARRIS**) to go get something for me (**WOODEN**) and give it to Koolaide."  **HARRIS** asked **WOODEN**, "Where that's at?"  **WOODEN** responded to **HARRIS**, "It's in the drawer at the house (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**)."

87.    Later during the telephone call, **WOODEN** stated to **HARRIS**, "It's in the drawer, it's in the drawer in the room. You (**HARRIS**) gotta go get it. I got two (2) bags in there. Just get one (1) of the bags and give it to him (**KOOLAIDE**)."

88.    Based on this intercepted communication, your Affiant believes **WOODEN** told **HARRIS** he needed her to go to **1713 St. Patrick St., Apartment 145, Donaldsonville, LA** and retrieve an unknown quantity of an unknown narcotics from a drawer.  Furthermore, your Affiant believes **WOODEN** told **HARRIS** to give the narcotics to a subject identified in the call as **KOOLAIDE**.

89.    On December 1, 2019, at approximately 4:46 p.m., agents intercepted Session 1860, an outgoing call from **WOODEN** over **TARGET TELEPHONE 3**, to telephone number 225-802-7281, utilized by **HARRIS**.  During the telephone call the following conversation occurred:

> **WOODEN**: "You made it to the house (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**)?"

**HARRIS**: "Yeah."

**WOODEN**: "He (**KOOLAIDE**) about to come right now."

**HARRIS**: "Alright."

**WOODEN**: "Just give it (narcotics) to him. He's (**KOOLAIDE**) gon' come back and bring me (**WOODEN**) the money (U.S. Currency)."

**HARRIS**: "A'ight."

90.     Based on this intercepted communication, your Affiant believes **HARRIS** told **WOODEN** she had arrived at **1713 St. Patrick St., Apartment 145, Donaldsonville, LA**. Furthermore, your Affiant believes that **WOODEN** told **HARRIS** that **KOOLAIDE** was on his way to **1713 St. Patrick St., Apartment 145, Donaldsonville, LA** to obtain the narcotics from **HARRIS**, and **KOOLAIDE** would pay **WOODEN** at a later time for the narcotics.

91.     On December 1, 2019, at approximately 4:47 p.m., agents intercepted Session 1862, an outgoing call from **WOODEN** over **TARGET TELEPHONE 3**, to telephone number 225-802-7281, utilized by **HARRIS**.

**WOODEN**: "You got one (1) of the bags out there?"

**HARRIS**: "No, I'm just gettin' in my home (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**), Shide (**WOODEN**). Yeah, I got it."

**WOODEN**: "Leave the rubber band, just get one (1)."

**HARRIS**: "Ah, God dam [U/I]"

**WOODEN**: "'Cause you would get two (2). No, I don't know [U/I] take this right here."

**HARRIS**: "If you tell me to get one (1), why would I get two (2)? I ain't no retarded [U/I]… now why you (**WOODEN**) put this in this big ass box? Really?"

[CONVERSATION CONTINUES]

**WOODEN**: "He (**KOOLAIDE**) came over there (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**) already?"

23

**HARRIS**: "Yeah, he (**KOOLAIDE**) just be leaving (**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**) now."

[CONVERSATION CONTINUES]

**HARRIS**: "Yeah, I'm sorry."

**WOODEN**: "You gave it (narcotics) to him (**KOOLAIDE**) in a bag? Or… you (**HARRIS**) just gave it (**narcotics**) to him like that?"

**HARRIS**: "I (**HARRIS**) had it (narcotics) in my jacket. I (**HARRIS**) was about to get a bag so he… I guess he look like he, he took it all, he put it in his shirt or something… I had it under my jacket."

**WOODEN**: "Alright."

**HARRIS**: "He must have put it in his shirt or something 'cause when I looked back I ain't see it no more."

92.    Based on this intercepted communication, your Affiant believes **HARRIS** told

**WOODEN** she was just walking in **1713 St. Patrick St., Apartment 145, Donaldsonville, LA.**

Furthermore, your Affiant believes **WOODEN** instructed **HARRIS** to only give **KOOLAIDE**

one of the bags of narcotics.  Additionally, your Affiant believes **HARRIS** told **WOODEN** that

**KOOLAIDE** just left and explained how **HARRIS** had the narcotics under her jacket and gave

it to **KOOLAIDE** who then placed it under his shirt.

93.    Based on the above-described intercepted communications, your Affiant believes

**HARRIS**, at the direction of **WOODEN**, retrieved an unknown quantity of a narcotics from

**1713 St. Patrick St., Apartment 145, Donaldsonville, LA**, and proceeded to the parking lot of

**1713 St. Patrick St., Donaldsonville, LA** where **HARRIS** distributed the narcotics to

**KOOLAIDE**.

94.    Based on the above-described intercepted communications, Affiant believes

**HARRIS** and **WOODEN** package, store and distribute methamphetamine at **1713 St. Patrick**

**St., Apartment 145, Donaldsonville, LA**.

> **G.** **Intercepted Communication over TARGET TELEPHONE 3 on December 3, 2021, wherein WOODEN advised U/M 0925 he had a quantity of marijuana at 302 Mulberry St., Donaldsonville, LA**

95.    On December 3, 2021, at approximately 1:44 p.m., agents intercepted Session

2062, an incoming call from telephone number 225-717-0925, utilized by an **Unknown Male**

**("U/M 0925")** over **TARGET TELEPHONE 3** to **WOODEN**.  During the telephone call, the

following conversation took place:

> **U/M 0925**: **"**Hey, you (**WOODEN**) got some of that shit like Ty got?"
>
> **WOODEN**: "That Bubba (marijuana)?"
>
> **U/M 0925**: "Yeah."
>
> **WOODEN**: "Yeah."
>
> **U/M 0925**: "Man when you get time man pass on me, throw me a lil' gram (one gram marijuana), man."
>
> **WOODEN**: "I got you, my nigga."
>
> **U/M 0925**: "A'ight, my G."
>
> **WOODEN**: "Hey, matter of fact I (**WOODEN**) got some (marijuana) by maw Betty (**302 Mulberry St., Donaldsonville, LA**). When you hear my car come on around there (**302 Mulberry St., Donaldsonville, LA**)."

96.    Based on this intercepted communication, your Affiant believes the **U/M 0925**

asked **WOODEN** if he had one gram of marijuana (Bubba), to which **WOODEN** confirmed.

Furthermore, your Affiant believes **WOODEN** told **U/M 0925** he had marijuana at **302**

**MULBERRY St., Donaldsonville, LA** and instructed **U/M 0925** to come to **302 Mulberry St.,**

**Donaldsonville, LA**, to obtain the marijuana.

97.    Based on the above-described intercepted communication, your Affiant believes

**WOODEN** packages, stores and distributes marijuana at **302 Mulberry St., Donaldsonvillle,**

LA.

**H.    Intercepted Communications on December 3, 2021, over TARGET TELEPHONE 3, wherein WOODEN instructed LEWIS to meet him at 302 Mulberry St., Donaldsonville, LA to obtain methamphetamine**

98.    On December 3, 2021, at approximately 9:04 a.m., agents intercepted Session 2031, an outgoing call from **WOODEN**, over **TARGET TELEPHONE 3**, to telephone number 225-323-3045, utilized by **LEWIS**.

99.    During the telephone call **LEWIS** asked **WOODEN,** "So how many (ounces) you (**WOODEN**) got... shard (crystal methamphetamine in a rock like formation) up? **WOODEN** replied to **LEWIS**, "The four (4 ounces) I told you, I got enough for a four (4 ounces).  The rest, the rest of the shit (methamphetamine), kinda shaky that's what I'm telling you."  **LEWIS** replied to **WOODEN**, "Alright. Four (4 ounces), shard (crystal methamphetamine in a rock like formation) up, right?"

100.    Later during this telephone conversation **WOODEN** told **LEWIS**, "Well look, just go by my grandma's (**302 Mulberry St., Donaldsonville, LA**) you heard me?"  **LEWIS** replied, "Huh?" to which **WOODEN** stated, "Go by my grandma' (**302 Mulberry St., Donaldsonville, LA**)."

101.    Based on this intercepted communication, your Affiant believes the **LEWIS** asked **WOODEN** if he had four ounces of methamphetamine, to which **WOODEN** confirmed. Furthermore, your Affiant believes **WOODEN** instructed **LEWIS** to come to **302 Mulberry St., Donaldsonville, LA**, to obtain the methamphetamine.

102.    Continuing on the same date, at approximately 3:30 p.m., agents intercepted Session 2070, an incoming call from telephone number 225-323-3045, utilized by **LEWIS** over **TARGET TELEPHONE 3** to **WOODEN**.  During the telephone call the following

conversation took place:

> **LEWIS:** "Nah, where you (**WOODEN**) at?"
>
> **WOODEN**: "By my grandma' (**302 Mulberry St., Donaldsonville, LA**)."
>
> **LEWIS:** "Alright. Give me (**LEWIS**) 'bout fifteen (15) minutes. I'm on my, coming to you (**WOODEN** at **302 Mulberry St., Donaldsonville, LA**) now."

103.    Based on this intercepted communication, your Affiant believes **LEWIS** asked **WOODEN** where he was located, to which **WOODEN** advised **302 Mulberry St., Donaldsonville, LA**.  Furthermore, your Affiant believes **LEWIS** stated he would meet **WOODEN** at **302 Mulberry St., Donaldsonville, LA**, to obtain the methamphetamine.

104.    Based on the above-described intercepted communication, your Affiant believes **WOODEN** distributes methamphetamine at **302 Mulberry St., Donaldsonville, LA**.

## V.    <u>CONCLUSION</u>

105.    Based on the facts set forth in this affidavit, as well as my training and experience, your Affiant believes that **WOODEN** and others have violated Title 21, United States Code, Sections 841(a)(1) and 846, and are utilizing the following locations: **1713 St. Patrick St., Apartment 145, Donaldsonville, LA 70346** and **302 Mulberry St., Donaldsonville, LA 70346** to facilitate their methamphetamine and marijuana trafficking activities.

106.    Based on the above-detailed intercepted telephone communications, in conjunction with physical surveillance, and cellular telephone location data, your Affiant believes that **WOODEN** utilizes **1713 St. Patrick St., Apartment 145, Donaldsonville, LA 70346** to store, package and distribute illicit narcotics, such as methamphetamine and marijuana and store U.S. Currency derived from illegal narcotics sales and distribution.  Your Affiant believes evidence, instrumentalities, and fruits of these narcotics trafficking activities are

27

contained within **1713 St. Patrick St., Apartment 145, Donaldsonville, LA 70346**.

107.    Based on the above-detailed intercepted communications, in conjunction with physical surveillance and cellular telephone location data, your Affiant believes that **WOODEN** utilizes **302 Mulberry St., Donaldsonville, LA 70346**, to store package, and distribute illicit narcotics, such as methamphetamine and marijuana, and store U.S. Currency derived from illicit narcotics sales and distribution. Your Affiant believes evidence, instrumentalities, and fruits of these narcotics trafficking activities are contained within **302 Mulberry St., Donaldsonville, LA 70346**.

108.    Through my training, education, and experience, I have also learned that drug traffickers maintain books, records, notes, airline tickets, money orders, and other papers and documents relating to transportation, ordering, sale, and distribution of illegal controlled substances in the place where they store their drugs.  It is also common for narcotics traffickers to hide drug sales and records of drug transactions in secure locations within their residence and/or residence of family member and/or residences of close associates for their ready access and control and to conceal them from law enforcement.  It is also common for narcotics traffickers to hide records of drug transactions in secure locations within their residence for their ready access and control, and to conceal them from law enforcement.  Narcotics traffickers also conceal, in their residences, currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of illegal drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of the money gained from illegal narcotics-trafficking activities.

109.    Your Affiant knows, through training and experience, that locations used by drug traffickers to store methamphetamine and marijuana, and package methamphetamine and

marijuana for distribution, often contain tools used for these purposes and other evidence of narcotics trafficking. These items include, but are not limited to, methamphetamine and marijuana kilogram wrappings, latex gloves, digital scales, packaging materials, cooking materials, cutting materials, mixing devices, rubber gloves, firearms, U.S. currency, and ledgers or logs containing records of past, present, or future drug transactions. Further, your Affiant knows, through training and experience, methamphetamine and marijuana traffickers sometimes keep firearms in their residences to protect the methamphetamine and marijuana and/or money derived from the sale of narcotics.

110.    Your Affiant knows, through training and experience, narcotics traffickers often keep money derived from the sale of illegal controlled substances in their residence. Furthermore, your Affiant knows, through training and experience, that locations used by narcotics traffickers to count, store, and package money derived from the sale of illegal controlled substances often contain tools used for this purpose. These tools include, but are not limited to, U.S. currency, rubber bands, money counters, plastic wrap, digital calculators, safes, strong boxes or other lockable containers, and written ledgers documenting dates, and amounts of currency transferred and to whom these transfers occurred.

111.    It is requested that the warrant and accompanying affidavit and application in support thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against potential flight, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting

under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.

112.    Based on the aforementioned information, I request the authority to search the search the premises described in Attachment A, for the things described in Attachment B.


_TFO Jason Dohm_
_____
Jason A. Dohm, Task Force Officer
Drug Enforcement Administration


Affidavit submitted by email/pdf. and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on the ___8th___ day of December, 2021.

_Erin Wilder-Doomes_
_____
HONORABLE ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

## ATTACHMENT A

### Property to Be Searched

The property to be searched is **302 Mulberry St., Donaldsonville, Louisiana 70346**, to include any outbuildings, storage sheds and vehicles associated with the premises if located thereon within the curtilage.

The property is further described as a single story, single-family dwelling. The residence is constructed of red, multi-colored brick and light colored vinyl siding.  The front door of the residence is white in color and faces Mulberry Street.  The numbers "302" are clearly displayed in black numbering above the front door of the residence.  Photographs of the property are included below.







## ATTACHMENT B

### Particular Things to be Seized

Items to be searched for and seized include the following:

1. Methamphetamine and marijuana;

2. Kilogram wrappings, digital scales located in places other than the kitchen and used for weighing of food or digital scales located anywhere in the residence if they contain drug residue, cutting agents (material commonly used to dilute methamphetamine to increase the quantity of the narcotics);

3. United States currency in denominations consistent with narcotics trafficking;

4. Written ledgers or records documenting dates and amounts of methamphetamine and/or currency transferred and to whom the transfer occurred with and logs containing records of past, present or future drug transactions, including customer lists;

5. Any cellular telephones or devices from which calls and texts can be made; and

6. Documents related to residency and/or ownership of the property being searched.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means                    ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No.  21- mj-107 |
| THE PREMISES LOCATED AT 302 MULBERRY ST. DONALDSONVILLE, LOUISIANA 70346 | ) ) ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Middle_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment "B"

**YOU ARE COMMANDED** to execute this warrant on or before _____December 21, 2021_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Erin Wilder-Doomes_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____12/08/2021 at 5:30 p.m._____          _Erin Wilder-Doomes_
                                                                                                              *Judge's signature*

City and state:   Baton Rouge, Louisiana          Erin Wilder-Doomes, U.S. Magistrate Judge
                                                                                              *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br> 21- mj-107 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| Certification |
|---|
|       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____<br><br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |

## <u>ATTACHMENT A</u>

### Property to Be Searched

The property to be searched is **302 Mulberry St., Donaldsonville, Louisiana 70346**, to include any outbuildings, storage sheds and vehicles associated with the premises if located thereon within the curtilage.

The property is further described as a single story, single-family dwelling. The residence is constructed of red, multi-colored brick and light colored vinyl siding.  The front door of the residence is white in color and faces Mulberry Street.  The numbers "302" are clearly displayed in black numbering above the front door of the residence.  Photographs of the property are included below.







## **ATTACHMENT B**

**Particular Things to be Seized**

Items to be searched for and seized include the following:

1. Methamphetamine and marijuana;

2. Kilogram wrappings, digital scales located in places other than the kitchen and used for weighing of food or digital scales located anywhere in the residence if they contain drug residue, cutting agents (material commonly used to dilute methamphetamine to increase the quantity of the narcotics);

3. United States currency in denominations consistent with narcotics trafficking;

4. Written ledgers or records documenting dates and amounts of methamphetamine and/or currency transferred and to whom the transfer occurred with and logs containing records of past, present or future drug transactions, including customer lists;

5. Any cellular telephones or devices from which calls and texts can be made; and

6. Documents related to residency and/or ownership of the property being searched.